1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

| | |
|---|---|
| FRANCISCO J. FIMBRES, LOREN MENDEZ, individuals,<br><br>                              Plaintiffs,<br><br>     vs.<br><br><br><br>CHAPEL MORTGAGE CORPORATION, CHICAGO TITLE COMPANY, SAXON MORTGAGE SERVICES, INC., HSBC MORTGAGE SERVICES, INC., DEUTSCHE BANK NATIONAL TRUST COMPANY, as trustee for IXIS 2006-HE2, its successors and/or assigns, & DOES 1 through 20,<br><br>                              Defendants. | CASE NO. 09-CV-0886-IEG (POR)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS SAXON MORTGAGE SERVICES, INC. AND DEUTSCHE BANK NATIONAL TRUST COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Doc. No. 21);**<br><br>**(2) DENYING AS MOOT PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (Doc. No. 31); and**<br><br>**(3) DENYING AS MOOT PLAINTIFFS' EX PARTE APPLICATION FOR RECONSIDERATION RE MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (Doc. No. 34).** |

25
26
27
28

        Presently before the Court is Defendants Saxon Mortgage Services, Inc. and Deutsche

Bank National Trust Company's ("Defendants") motion to dismiss Plaintiffs Francisco J. Fimbres

and Loren Mendez's ("Plaintiffs") first amended complaint.  Defendants also request judicial notice of several documents in support of the motion to dismiss.

To date, Plaintiffs have filed no opposition.[1]  When an opposing party does not file papers in the manner required by Civil Local Rule 7.1(e)(2), the Court may deem the failure to constitute a consent to the granting of a motion or other request for ruling by the court.  Civ. L. R. 7.1(f)(3)(c).  Notwithstanding Plaintiffs' failure to respond, the Court reviews the motion on the merits to ensure dismissal is appropriate.  The Court finds the motion appropriate for disposition without oral argument pursuant to Civil Local Rule 7.1(d).

## FACTUAL BACKGROUND

The following facts are drawn from Plaintiffs' first amended complaint ( "FAC") unless otherwise noted.  On January 5, 2006, Plaintiffs purchased a single-family home located at 2218 Yturralde Drive, Calexico, California 92231 (the "Property").  Plaintiffs financed the Property by obtaining a loan, secured by a deed of trust against the Property, from Defendant Chapel Mortgage Corporation ("Chapel Mortgage").  Defendant Deutsche Bank National Trust Company ("Deutsche") is both the assignee of the deed of trust (Def.'s Request for Judicial Notice [hereinafter "RJN"], Exhibit 8) and the purchaser of the Property at the foreclosure sale.  Defendant Saxon Mortgage Services ("Saxon") is the current loan servicer for Deutsche.

Plaintiffs allege that during the initial loan application process, they were required to state their income.  Defendants did not request proof of their income and did not show Plaintiffs the exact amount of income eventually stated in the loan application.  Plaintiffs contend Defendants intentionally inflated Plaintiffs' incomes in the application without disclosing the changes to them.  Plaintiffs allege that based on the inflated income amounts, they were able to obtain a loan, although Defendants knew they could not afford it.   As a result, Plaintiffs contend the debt-to-income ratio on the loan ended up being well above the industry recommended 35%.  Plaintiffs

---

[1]The Court granted Plaintiffs a two-week extension in order to file an opposition to Defendants' motion to dismiss. Instead, Plaintiffs filed a motion for leave to file a second amended complaint.  Although the Court had not issued an order denying the motion, on October 30, 2009, Plaintiffs filed an ex parte application for reconsideration regarding the motion for leave to file a second amended complaint.  In this order on the motion to dismiss, the Court addresses the extent to which Plaintiffs may amend the first amended complaint.  Therefore, the Court denies as moot the motion for leave to file a second amended complaint and the ex parte application for reconsideration.

also allege that at the time of closing, they failed to receive initial and final disclosures, including RESPA, TILA, ECOA, and FCRA disclosures.

Plaintiffs later had difficulty paying their mortgage. During this period, Plaintiffs contend they never received any communication from Defendants regarding the potential for loan modification. On April 29, 2009, the Property was sold at a foreclosure sale, allegedly without proper legal notices. Deutsche purchased the Property. On March 30, 2009, an unlawful detainer action was filed against Plaintiffs in state court.

## PROCEDURAL HISTORY

On April 28, 2009, Plaintiffs filed the original complaint against Defendants. (Doc. No. 1.) On May 6, 2009, before Defendant answered, Plaintiffs filed a first amended complaint, adding Deutsche as a defendant. (Doc. No. 3.) Plaintiffs bring the following 18 causes of action: (1) intentional misrepresentation, (2) breach of fiduciary duty, (3) breach of the covenant of good faith and fair dealing, (4) declaratory relief, (5) quiet title, (6) violation of ECOA, (7) predatory lending, (8) negligence, (9) usury, (10) accounting, (11) violations of TILA and HOEPA, (12) violation of RESPA, (13) violation of FCRA, (14) slander of title, (15) violation of California Civil Code § 1632, (16) violation of California Business & Professions Code § 17200, (17) violation of California Civil Code § 2923.6, and (18) violation of California Civil Code § 2923.5.

On August 24, 2009, Defendants Saxon and Deutsche filed this motion to dismiss all 18 causes of action for failure to state a claim. (Doc. No. 21.)

## DISCUSSION

I.    Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2009). A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996). To avoid a Rule 12(b)(6) dismissal, a

1  complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state

2  a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570

3  (2007).  However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

4  requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

5  action will not do." <u>Id.</u> at 555 (citation omitted).  "Factual allegations must be enough to raise a

6  right to relief above the speculative level, on the assumption that all the allegations in the

7  complaint are true (even if doubtful in fact)." <u>Id.</u> (citation omitted).   In spite of the deference the

8  court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the

9  [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . .

10  laws in ways that have not been alleged." <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State</u>

11  <u>Council of Carpenters</u>, 459 U.S. 519, 526, (1983).  Also, the court need not accept "legal

12  conclusions" as true.  <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009).

13        However, "[w]hen there are well-pleaded factual allegations, a court should assume their

14  veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at

15  1941.  A claim has "facial plausibility when the plaintiff pleads factual content that allows the

16  court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

17  at 1939 (citing <u>Twombly</u>, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability

18  requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

19  <u>Id.</u> at 1949 (citing <u>Twombly</u>, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely

20  consistent with' a defendant's liability, it 'stops short of the line between possibility and

21  plausibility of entitlement to relief.'" <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 557).

22

23  II.     <u>Request for Judicial Notice</u>

24        On June 10, 2009, Defendants filed a request for judicial notice asking the Court to

25  judicially notice the following documents filed in the Imperial County Recorder's Office: (1)

26  Grant Deed, recorded January 12, 2006; (2) Deed of Trust, recorded January 12, 2006 (Doc. No.

27  2006-001936); (3) Deed of Trust, recorded January 12, 2006 (Doc. No. 2006-001937); (4) Notice

28  of Default, recorded June 20, 2008; (5) Substitution of Trustee, recorded on December 12, 2008;

(6) Notice of Trustee's Sale, recorded on December 12, 2008; (7) Assignment of Deed of Trust, recorded on January 22, 2009; (8) Trustee's Deed Upon Sale, recorded January 22, 2009; and (9) Notice of Pendency of Action, recorded April 29, 2009.  Defendants also request judicial notice of a First Amended Complaint filed by Plaintiffs' counsel on May 6, 2009 in a different case, Lopez v. New Century Mortgage Corp., et al., Case No. 09-cv-0885, filed in the United States District Court, Southern District of California.

In ruling on a motion to dismiss for failure to state a claim, "a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). Accordingly, a court may consider matters of public record on a motion to dismiss, and in doing so "does not convert a Rule 12(b)(6) motion to one for summary judgment."  Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by* Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 111 (1991).

Here, the documents Defendants have submitted are public records subject to judicial notice under Federal Rule of Evidence 201.  The Court therefore GRANTS Defendants' request for judicial notice.

III.   Analysis

A.   First Cause of Action: Intentional Misrepresentation

In their first cause of action Plaintiffs allege intentional misrepresentation, or fraud.  Under California law, there are five elements of common law fraud: (1) misrepresentation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage.  Gil v. Bank of Am., N.A., 42 Cal. Rptr. 3d 310, 317 (Ct. App. 2006).  Federal Rule of Civil Procedure 9(b) requires: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  In the Ninth Circuit, this rule "has been interpreted to mean the pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation."  Misc. Serv. Workers, etc. v. Philco-Ford Corp., WDL Div., 661 F.2d 776, 782 (9th Cir. 1981).  "In the context of a fraud suit involving multiple

defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 765 (9th Cir.2007) (quoting <u>Moore v. Kayport Package Express</u>, 885 F.2d 531, 541 (9th Cir.1989)).  In construing a claim of fraud,  "the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect." <u>Gil</u>, 42 Cal. Rptr. 3d at 317.

Plaintiffs' allegations lack the requisite particularity.  It is critical to note that Plaintiffs' allegations generally do not differentiate between the different defendants.  The extent of Plaintiffs' fraud allegation is that "Defendants . . . inserted an inflated income for the Plaintiffs, without disclosing said change to them" (FAC ¶ 22), and that based on the inflated income they "were able to obtain a loan, though Defendants were clearly aware that such loan could not be afforded by Plaintiffs"  (FAC ¶ 23.)  First, Plaintiffs fail to identify a single representation made by Saxon or Deutsche in connection with the loan origination.  Plaintiffs allege that they "utilized the services of *Chapel Mortgage Corporation* to obtain a loan." (FAC ¶ 20 (emphasis added).)  Second, Plaintiffs fail to provide the specific content of the alleged  misrepresentations.  Plaintiffs do not state what income amounts they claimed on their application and what inflated amounts Defendants later inserted.  Plaintiffs contend the debt-to-income ratio on the loan ended up being well above the industry recommended 35%, but do not allege the actual debt-to-income ratio on their loan.

This lack of particularity requires the Court to GRANT Defendants' motion to dismiss Plaintiffs' intentional misrepresentation claim.


**B.**    <u>Second Cause of Action: Breach of Fiduciary Duty</u>

Plaintiffs allege that "Defendants breached their fiduciary duty to Plaintiffs."  (FAC ¶ 29.)  However, it is well established that a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.  <u>Nymark v. Heart Fed. Sav. & Loan Assn.</u>, 283 Cal. Rptr. 53, 56 (Ct. App. 1991); <u>see also</u> <u>Price v. Wells Fargo Bank</u>, 261 Cal.Rptr. 735, 740 (Ct. App. 1989) (citing <u>Downey v. Humphreys</u>, 227 P.2d 484 (Cal. 1951)) ("'A debt is not a trust and there is not a

09cv0886

fiduciary relation between debtor and creditor as such.' The same principle should apply with even greater clarity to the relationship between a bank and its loan customers."). "Without a fiduciary relationship, there can be no breach of fiduciary duty." <u>Tina v. Countrywide</u>, 2008 U.S. Dist. LEXIS, at *11, 2008 WL 4790906, at *4 (S.D. Cal. Oct. 30, 2008).

Here, Plaintiffs do not allege any facts to support a finding that a fiduciary relationship existed. Plaintiffs do not allege that they had anything more than a borrower-lender relationship with Defendants. Accordingly, the Court GRANTS Defendants' motion to dismiss with prejudice Plaintiffs' breach of fiduciary duty claim.

<u>C.</u>    <u>Third Cause of Action: Breach of Covenant of Good Faith and Fair Dealing</u>

Plaintiffs allege that Defendants breached an implied covenant of good faith and fair dealing. "California law implies a covenant of good faith and fair dealing in every contract." <u>Mundy v. Household Fin. Corp.</u>, 885 F.2d 542, 544 (9th Cir.1989) (citing <u>Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.</u>, 686 P.2d 1158, 1166 (Cal. 1984)). "The implied covenant imposes certain obligations on contracting parties as a matter of law - specifically, that they will discharge their contractual obligations fairly and in good faith." <u>Mundy</u>, 885 F.2d at 544 (citing <u>Koehrer v. Superior Court</u>, 226 Cal.Rptr. 820, 828 (1986)). The prerequisite for any action for breach of the covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, because the covenant is an implied term of the contract. <u>Smith v. City & County of San Francisco</u>, 275 Cal. Rptr. 17, 23-24 (Ct. App. 1990).

Plaintiffs allege "the agreements entered into between Plaintiffs and Defendants contained an implicit covenant of good faith and fair dealing" (FAC ¶ 34), and that Defendants breached it by "purposefully overstating Plaintiffs' income and failing to disclose material information in the loan application process" (FAC ¶ 35). First, Plaintiffs' claim against Saxon fails because Plaintiffs do not allege the existence of a contractual relationship with Saxon, the loan servicer. Second, Plaintiffs' claim against Deutsche fails because Plaintiffs do not allege facts to support a finding that Deutsche did not fairly and in good faith discharge its contractual obligations. The alleged wrongful acts involve the loan origination, to which Deutsche was not a party. Finally, to the

extent that Plaintiffs' allegations target the loan application process, this claim fails because "the implied covenant [of good faith and fair dealing] is a supplement to an existing contract, and thus it does not require parties to negotiate in good faith prior to any agreement." See McClain v. Octagon Plaza, LLC, 71 Cal. Rptr. 3d 885, 897 (Ct. App. 2008).

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

###### D.      Fourth Cause of Action: Declaratory Relief

Plaintiffs request a judicial determination and declaration of the rights of the parties concerning the Property and the loan transaction.  (FAC ¶ 40-41.)  "Declaratory relief is appropriate when: (1) the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  Guerra v. Sutton, 783 F.2d 1371, 1376 (9th Cir. 1986). While "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate," Fed. R. Civ. P. 57 (2009), "[t]he availability of other adequate remedies may make declaratory relief 'inappropriate,'" StreamCast Networks, Inc. v. IBIS LLC, 2006 U.S. Dist. LEXIS 97607, at *10, 2006 WL 5720345, at *4 (C.D. Cal. May 2, 2006).  Moreover, a federal court may decline to address a claim for declaratory relief "[w]here the substantive suit would resolve the issues raised by the declaratory judgment action, . . . because the controversy has 'ripened' and the uncertainty and anticipation of litigation are alleviated."  Tina v. Countrywide Home Loans, Inc., 2008 U.S. Dist. LEXIS 88302, at *6, 2008 WL 4790906, at *2 (S.D. Cal. Oct. 30, 2008) (quoting Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 749 (7th Cir. 1987)).

Here, the FAC does not suggest that a declaratory judgment would entitle Plaintiffs to any relief beyond the relief requested pursuant to the substantive claims or that a declaratory judgment would resolve any uncertainties aside from those already addressed by the substantive claims.  As such, the Court GRANTS Defendants' motion to dismiss with prejudice Plaintiffs' claim for declaratory relief.

09cv0886

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

E.      Fifth Cause of Action: Quiet Title

Plaintiffs bring a quiet title claim against Defendants, alleging that "Defendants claim and assert interests in the above-described property which are adverse to Plaintiffs" and that the claims of Defendants are based on the deeds of trust.  (FAC ¶ 44.)

The purpose of a quiet title action is to determine "all conflicting claims to the property in controversy and to decree to each such interest or estate therein as he may be entitled to." Newman v. Cornelius, 83 Cal. Rptr. 435, 437 (Ct. App. 1970).  California Code of Civil Procedure § 761.020 provides that a complaint for quiet title "shall be verified" and shall include the following:

> (a) A description of the property that is the subject of the action. . . .  In the case of real property, the description shall include both its legal description and its street address or common designation, if any.
>
> (b) The title of the plaintiff as to which a determination under this chapter is sought and the basis of the title. . . .
>
> (c) The adverse claims to the title of the plaintiff against which a determination is sought.
>
> (d) The date as of which the determination is sought. If the determination is sought as of a date other than the date the complaint is filed, the complaint shall include a statement of the reasons why a determination as of that date is sought.
>
>  (e) A prayer for the determination of the title of the plaintiff against the adverse claims.

Cal. Civ. Proc. Code § 761.020 (2009).  Defendants argue that Plaintiffs' claim fails because the FAC is not verified.  However, a federal court need not follow a forum state practice requiring verification.  See Fed. R. Civ. P. 11(a) ("Unless a rule of statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit."); see also Farzana K. v. Indiana Dep't of Educ., 473 F.3d 703 (7th Cir. 2007).  In any event, Plaintiffs fail to state a claim because they fail to allege "specific adverse claims" by Defendants that form the basis of the property dispute.  See id. § 761.020, cmt. at ¶ 3 (2009).  Plaintiffs' allegations refers to all defendants generally, which is insufficient to give Defendants notice of the claim against them.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' quiet title claim.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**F.      Sixth Cause of Action: Equal Credit Opportunity Act**

Plaintiffs' cause of action under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, is time-barred.  Plaintiffs allege that "in the course and conduct of making the mortgage to Plaintiffs, Defendants "discriminated against Plaintiffs on the basis of race, color, religion, national origin, sex, marital status, or age, receipt of public assistance or because Plaintiffs have exercised any of his rights as detailed in the [ECOA] . . . ." (FAC ¶ 49.)

An ECOA claim must be brought no later than two years from "the date of the occurrence of the violation." 15 U.S.C. § 1691e(f) (2009).  Plaintiffs allege the violations occurred "in the course and conduct of making the mortgage." (FAC ¶ 49.)  Plaintiffs entered into the loan agreement with Chapel Mortgage on or about January 5, 2006 (FAC ¶ 20); however, Plaintiffs did not bring suit until April 28, 2009, over three years later.  Any claim Plaintiffs may have had under the ECOA is therefore time-barred.

Accordingly, the Court GRANTS Defendants' motion to dismiss with prejudice Plaintiffs' claim under the ECOA.

**G.      Seventh Cause of Action: Predatory Lending**

Plaintiffs fail to state a claim for violation of California's predatory lending laws. Plaintiffs merely incorporate the previous allegations and state that "the conduct of Defendants was in violation of California's predatory lending laws, as set forth in California Financial Code § 4970 et. seq." (FAC ¶ 55.)  The claim contains no charging allegations against Defendants Saxon and Deutsche in particular.  Plaintiffs also fail to specify which provisions of the predatory lending laws were allegedly violated.  This is insufficient to give Defendants notice of the claims against them.  Furthermore, Plaintiffs fail to allege that their loan is covered under the predatory lending laws.  See Cal. Fin. Code § 4970(b) (2009) (defining "covered loan").

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claim for violation of the predatory lending laws.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

H.     Eighth Cause of Action: Negligence

Plaintiffs allege that "Defendants . . . owed a duty of care to Plaintiffs," which was breached by "negligently placing Plaintiffs in the above described loans."  (FAC ¶ 60.)  The elements of a cause of action for negligence are: (1) a legal duty to use due care, (2) a breach of such legal duty, and (3) the breach as the proximate or legal cause of the resulting injury.  Ladd v. County of San Mateo, 911 P.2d 496, 498  (Cal. 1996).

Plaintiffs' negligence claim is little more than a "formulaic recitation" of the elements of a cause of action for negligence, and therefore fails to state a claim.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).  First, Plaintiffs' conclusory assertion that all Defendants "owed a duty of care" is insufficient; the Court need not accept Plaintiffs' legal conclusions as true.  See Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009).  Plaintiffs do not allege that they had anything more than a borrower-lender relationship with the Defendants, and "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  Nymark v. Heart Fed. Savings & Loan Ass'n, 283 Cal. Rptr. 53, 57 (Ct. App. 1991).  "Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.' " Id. (quoting Connor v. Great Western Sav. & Loan Ass'n, 447 P.2d 609 (1968).  Second, Plaintiffs have not sufficiently pled which actions by Defendants allegedly breached a legal duty.

Finally, to the extent that Plaintiffs base their claim on the loan origination, the claim is barred by the two-year statute of limitations.  See Cal. Code. Civ. P. § 335.1 (two-year limitation on commencing actions other than for recovery of real property).  Plaintiffs entered into the loan agreement with Chapel Mortgage on or about January 5, 2006 (FAC ¶ 20), but Plaintiffs did not bring suit until April 28, 2009, over three years later.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' negligence claim.

09cv0886

I.      **Ninth Cause of Action: Usury**

Plaintiffs allege that "the annual interest rate on the loan is usurious" in violation of Section 1 of Article XV of the California Constitution.  (FAC ¶ 65.)  Plaintiffs allege that the interest rate on the loan violates the statutory maximum rate set in either Section 1(1) or 1(2).

The California Constitution, article XV, section 1, states: "No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action."  Cal. Const. art. XV, § 1.  However, Article XV sets out many exemptions, including any "any other class of persons authorized by statute."  Id.  "The essential elements of usury are: (1) the transaction must be a loan or forbearance of the use of money; (2) the loan or forbearance must be made by a non-exempt lender and in a nonexempt transaction; (3) the interest received by the lender must be in excess of the statutory maximum rate that is applicable to the transaction; and (4) the lender must have a willful intent to enter a usurious transaction."  Ghirardo v. Antonioli 8 Cal.4th 791, 798 (1994).

Plaintiffs fail to state a claim for usury.  First, Plaintiffs do not sufficiently allege that the loan's interest rate is in excess of the statutory maximum rate.  In fact, Plaintiffs do not allege the interest rate of the loan or the specific statutory maximum.  Second, Plaintiffs do not allege a non-exempt lender issued the loan and in a nonexempt transaction.  Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claim for usury.

J.      **Tenth Cause of Action: Accounting**

Plaintiffs request the Court "render an accounting between the parties."  (FAC at 25:15-16.)  Plaintiffs state that "[t]he amount of money due, if any, from Plaintiffs to Defendants is unknown to Plaintiffs and cannot be determined without an accounting."  (FAC ¶ 72.)

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting."  Teselle v. McLoughlin, 92 Cal. Rptr. 3d

696, 715 (Ct. App. 2009).  Here, while Plaintiffs allegedly owe Defendants an amount past due on the underlying mortgage, Defendants do not allegedly owe Plaintiffs any money.  This failure to plead "some balance is due the plaintiff" is fatal to Plaintiffs' claim.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claim for an accounting.

K.     Eleventh Cause of Action: Violations of TILA and HOEPA

Plaintiffs allege that Defendants violated the Truth in Lending act ("TILA"), 15 U.S.C. § 1601, *et seq.*, including the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. § 1602, *et seq*, and TILA's implementing regulation (known as "Regulation Z"), 12 C.F.R. § 226, which sets out TILA's general disclosure requirements.

Regulation Z requires a creditor to make certain disclosures "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17 (2009).  HOEPA applies to certain high risk loans involving higher interest rates and costs.  HOEPA's disclosure requirements include those otherwise included under TILA, in addition to the special requirements set out in 15 U.S.C. § 1639.[2]

Plaintiffs claim Defendants violated the requirements of HOEPA and Regulation Z "in the course and conduct of offering and making the HOEPA mortgage loan."  (FAC ¶¶ 81-83.) First, Plaintiffs allege Defendants failed to make certain disclosures in writing at least three business days prior to consummation of the loan transaction.  (FAC ¶ 81.)  Second, Plaintiffs contend Defendants used prohibited loan terms, namely, a "balloon payment" provision and "increased interest rate" after default provision.  (FAC ¶ 82.)  Finally, Plaintiffs allege Defendants engaged "in a pattern or practice of extending such credit to Plaintiffs, a consumer, based on Plaintiffs' collateral rather than considering Plaintiffs' current and expected income, current obligations, and employment status to determine whether the consumer is able to make

---

[2] These disclosure requirements only apply to loans in which "the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities" or those in which "the total points and fees payable by the consumer at or before closing will exceed the greater of–(i) 8 percent of the total loan amount; or (ii) $ 400." 15 U.S.C. § 1602(aa)(1)(2009).

the scheduled payments to repay the obligation." (FAC ¶ 83.) Plaintiffs seek rescission and damages. (FAC ¶ 84.)

Plaintiffs fail to state a claim. First, the conduct at issue relates to the loan origination, to which neither Saxon nor Deutsche were a party. Second, Plaintiffs fail to allege facts to support a finding that the loan is covered by HOEPA. See 15 U.S.C. § 1602(aa)(1) (describing loans to which HOEPA disclosure requirements apply). Plaintiffs merely state that the loan "was a HOEPA mortgage loan" (FAC ¶ 81). Moreover, as discussed below, Plaintiffs' claims for damages and rescission for violations of TILA and HOEPA are time-barred.

### 1.    Damages Claim

Any action for TILA damages must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). In claims under TILA, the statutory period generally "starts at the consummation of the [loan] transaction." King v. California, 784 F.2d 910, 915 (9th Cir. 1986). As a subset of TILA, HOEPA claims are subject to the same statute of limitations. Additionally, because any claim under Regulation Z is derivative of a TILA claim, the same statute of limitations applies. However, equitable tolling may be appropriate "in certain circumstances," such as when a borrower might not have had a reasonable opportunity to discover the nondisclosures at the time of loan consummation. King v. State of California, 784 F.2d 910, 915 (9th Cir. 1986).

Plaintiffs do not allege that any of the violations occurred within the statutory period or that equitable tolling is appropriate. Plaintiffs' allegations involve the loan origination, which occurred on or about January 5, 2006 (FAC ¶ 20), but Plaintiffs did not bring suit until April 28, 2009, over three years later. Plaintiffs' claim for monetary damages is therefore time-barred.

### 2.    Rescission Claim

An obligor's right of rescission under TILA expires, at the latest, "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f). TILA and its regulations require "a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind." Id. § 1635(a); 12 C.F.R. § 226.23(b)(1). If the creditor provides such notice, TILA's "buyer's remorse" provision allows

borrowers three business days to rescind, without penalty, a consumer loan that uses their principal dwelling as security.  15 U.S.C. § 1635(a).  If the creditor fails to deliver the notice, the borrower may rescind the loan within three years after it was consummated.  Id. § 1635(f); 12 C.F.R. § 226.23(a)(3).

To exercise the right to rescind, a borrower must "notify the creditor of the rescission by mail, telegram or other means of written communication."  12 C.F.R. § 226.23(a)(2).  Notice is effective "when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business."  Id.  Although the Ninth Circuit has not reached the issue, "the consensus is that 'the filing of a lawsuit can be sufficient written notice of rescission under TILA so long as the complaint seeks rescission.'"  Toscano v. Ameriquest Mortgage Co., 2007 U.S. Dist. LEXIS 81884, at *8, 2007 WL 3125023, at *3 (E.D. Cal. Oct. 24, 2007) (quoting Jones v. Saxon Mortgage, 537 F.3d 320, 325-26 (4th Cir. 1998)).

Under this statutory scheme, the latest that Plaintiffs could exercise their right to rescind would have been three years after the loan transaction (i.e., January 5, 2009) or upon sale of the Property, whichever occurred first.  See 15 U.S.C. § 1635(f).  The Property was sold on December 31, 2008 (RJN, Exhibit 8); therefore, Plaintiffs' right to rescind expired on December 31, 2008.  Plaintiffs did not bring suit until April 28, 2009 and do not allege they attempted to rescind at any time before this.  Therefore, Plaintiffs' demand for rescission is time-barred.

Accordingly, the Court GRANTS Defendants' motion to dismiss with prejudice Plaintiffs' claim for violations of TILA and HOEPA.

### L.   Twelfth Cause of Action: Violation of RESPA

Plaintiffs allege Defendants violated the Federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617 (2009).   RESPA protects consumers from unnecessarily high settlement charges and abusive mortgage practices in connection with federally related mortgage loans.  See id. § 2601.

Plaintiffs allege that "in the course and conduct of offering and making the RESPA mortgage loan to Plaintiffs," Defendants violated § 2607 by "(a) providing a person with a fee,

kickback or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person" and "(b) providing a fee portion, split or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."  (FAC ¶ 91.)  Plaintiffs contend Defendants violated § 2608 by "requiring, directly or indirectly, as a condition to selling the property, that title insurance covering the property be purchased by the buyer from any particular title company."  (FAC ¶ 92.)

Plaintiffs' allegations fail to state a claim.  First, Plaintiffs do not allege facts to support a finding that the loan is a "federally related mortgage loan" covered by RESPA.  See 12 U.S.C. § 2602 (2009).  Plaintiff merely alleges that Defendants made a "RESPA mortgage loan to Plaintiffs." (FAC ¶ 90.)  Second, Plaintiffs allege Defendants violated Sections 2607 and 2608, but fail to allege any unlawful acts by Saxon and Deutsche in particular.  Instead, Plaintiffs' allegations simply quote the statutory language in Sections 2607(a)-(b) and 2608.  (FAC ¶¶ 91, 92.)  Third, Plaintiffs allege Defendants violated other RESPA requirements by failing to provide an (1) initial good faith estimate, (2) final good faith estimate, (3) notice of assignment, sale or transfer of servicing rights, and (4) escrow account disclosure.  (FAP ¶ 90.)  However, Plaintiffs fail to state what sections of RESPA are violated.  These allegations are insufficient to put Defendants on notice of what the claims are against them.

Finally, to the extent that Plaintiffs' claims are based on the loan origination, the claims are time-barred.  RESPA claims for violations of Section 2607 and 2608 must be brought within one year.  12 U.S.C. § 2614 (2009).  Without additional facts to consider, it appears Plaintiffs' claims are time-barred.  Furthermore, the Court notes that RESPA does not provide for rescission as a remedy for violation of Section 2607.  See id. § 2607(d).

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claim for violation of RESPA.

09cv0886

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

M.      Thirteenth Cause of Action: Violation of FCRA

Plaintiffs allege that Defendants violated numerous provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* The purpose of the FCRA is to ensure fair and accurate credit reporting. Id. § 1681. "The FCRA places obligations on three distinct types of entities involved in consumer credit: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." Carney v. Experian Info. Solutions, Inc., 57 F. Supp. 2d 496, 500 (W.D. Tenn. 1999).

Plaintiffs allege that "in the course and conduct of offering and making the above-noted mortgage to Plaintiffs, defendants violated numerous provisions of FCRA" by failing to: (1) provide credit scores; (2) provide Notice to Home Loan Applicant, (3) provide Notices of Adverse Action; (4) provide Risk-Based Pricing Notice; and (5) make Investigative Consumer Report Disclosure. (FAC ¶ 98.) These allegations are insufficient and conclusory. First, Plaintiffs fail to state what sections of the FCRA are violated by failure to provide these disclosures, so as to give Defendants proper notice of the claims against them. Second, Plaintiffs fail to allege any facts to support a finding that Defendants were required to make these disclosures; for example, that Defendants procured or caused to be prepared an Investigative Consumer Report on Plaintiffs, which would trigger Defendants' obligation to disclose to Plaintiffs its preparation of the report. See 15 U.S.C. § 1681d. Finally, to the extent that Plaintiffs' claims are based on the loan origination, the claims are time-barred. Plaintiffs must bring FCRA claims within two years of the date of discovery of the violation. See 15 U.S.C. § 1681p.

Plaintiffs have not pled facts to suggest "more than a sheer possibility that a defendant has acted unlawfully." See Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claim for violation of the FCRA.

N.     Fourteenth Cause of Action: Slander of Title

Plaintiffs bring a claim of slander of title.  The elements of the cause of the action for slander of title are: (1) publication, (2) falsity, (3) absence of privilege, and (4) disparagement of another's land which is relied upon by a third party and which results in a pecuniary loss.  Appel v. Burman 206 Cal. Rptr. 259, 262 (Ct. App. 1984).

Plaintiffs' claim fails because the allegedly unlawful publication is privileged as a matter of law.  Plaintiffs allege that "Defendants . . . have recorded and/or caused to be recorded documents with the San Diego County Recorder's Office which contain false statements and representations."  (FAC ¶ 102.)  However, "Civil Code section 2924 deems the statutorily required mailing, publication, and delivery of notices in nonjudicial foreclosure, and the performance of statutory nonjudicial foreclosure procedures, to be privileged communications under the qualified, common-interest privilege of Civil Code section 47, subdivision (c)(1)."  Kachlon v. Markowitz, 85 Cal. Rptr. 3d 532, 539 (Ct. App. 2008).

Accordingly, the Court GRANTS Defendants' motion to dismiss with prejudice Plaintiffs' slander of title claim.

O.     Fifteenth Cause of Action: Violation of California Civil Code § 1632

Plaintiffs allege Defendants violated California Civil Code § 1632 *et seq.* because they failed to provide Plaintiffs with documents in Spanish, their primary language, during the loan negotiations.  (FAC ¶ 106.)  California Civil Code § 1632(b) provides: "any person engaged in trade or business who negotiates primarily in Spanish . . ., orally or in writing, in the course of entering into any of the following [loan agreements], shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation . . . in the language in which the contract or agreement was negotiated, which includes a translation of every term and condition in that contract or agreement."  Cal. Civ. Code § 1632(b) (2009).  The types of loan agreements subject to this requirement are set out in subsections 1632(b)(1)-(7).

Defendants argue that Plaintiffs fail to state a claim because they do not allege that the loan negotiations in their case were actually and primarily conducted in Spanish.  The Court

disagrees.  The Court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. See Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996).  Here, from the fact that Plaintiffs' primary language is Spanish, the Court can draw a reasonable inference that the loan negotiations were conducted primarily in Spanish.  Thus, Plaintiffs' failure to allege that the loan negotiations in their case were actually and primarily conducted in Spanish is not fatal to their claim.

However, Plaintiffs fail to state a claim because they do not allege sufficient facts to support a finding that the loan agreement is one of the types of loan agreements listed in subsections 1632(b)(1)-(7) which are subject to the requirement.  Subsection 1632(b)(4) appears to be the only one that may apply.[3]  That subsection refers to "a loan or extension of credit for use primarily for personal, family or household purposes" where the loan or extension of credit is subject to the provisions of the California Civil Code dealing with "real estate brokers,"[4] "industrial loan companies,"[5] or "finance lenders."[6]  Cal. Civ. Code § 1632(b)(4). Plaintiffs do not allege that Defendants fall into any of these categories, and it is not proper for the Court to assume that Plaintiffs "can prove facts that [he or she] has not alleged."  See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526, (1983). Plaintiffs also fail to allege that the loan is for use primarily for personal, family or household purposes.

---

[3]Section 1632(b)(4) states in full: "Notwithstanding paragraph (2), a loan or extension of credit for use primarily for personal, family or household purposes where the loan or extension of credit is subject to the provisions of Article 7 (commencing with Section 10240) of Chapter 3 of Part 1 of Division 4 of the Business and Professions Code, or Division 7 (commencing with Section 18000), or Division 9 (commencing with Section 22000) of the Financial Code." Cal. Civ. Code § 1632(b)(4) (2009).

[4] Cal. Business & Professions Code § 10240 (2009).

[5] Cal. Fin. Code § 18003 (2009) (defining "industrial loan company" as a "premium finance agency"; § 18560 (defining "premium finance agency" as a " industrial loan company incorporated under this division which, by the terms of its authority to engage in the industrial loan business, is permitted to issue or sell investment certificates").

[6]Cal. Fin. Code § 22001 (2009); § 22060 ("This division does not apply to a loan made or arranged by a licensed residential mortgage lender or servicer when acting under the authority of that license.").

09cv0886

1
2
3

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claim under California Civil Code § 1632.

4
5

P.    Sixteenth Cause of Action: Violation of California Business and Professions Code §17200

6
7
8
9

Plaintiffs allege that "by reason of Defendants' fraudulent, deceptive, unfair and other wrongful conduct as herein alleged, said Defendants have violated California Business and Professions Code § 17200 et seq. by consummating an unlawful, unfair and fraudulent business practice, designed to deprive Plaintiffs of their equity in said property."  (FAC ¶ 111.)

10
11
12
13
14

Because Section 17200 is written in the disjunctive, it prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices.  Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 973 P.2d 527, 540 (Cal. 1999).  By proscribing "unlawful" acts or practices, "Section 17200 'borrows' violations of other laws and treats them as unlawful practices independently actionable."  Id. at 539-40.

15
16
17
18
19
20
21
22
23
24
25
26

The definition of "unfair" acts or practices in consumer actions is uncertain.  There are two opposing lines of California appellate court opinions.  See, e.g., Morgan v. Harmonix Music Sys., Inc., 2009 WL 2031765, at *4 (N.D. Cal. 2009) (noting the split in authority); Bardin v. DaimlerChrysler Corp., 39 Cal. Rptr. 3d 634, 639-48) (same).  "One line defines 'unfair' as prohibiting conduct that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  Id. (citing Smith v. State Farm Mut. Auto. Ins. Co., 113 Cal. Rptr. 2d 399, 415 (Ct. App. 2001).  "The other line of cases holds that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong . . . must be "tethered to specific constitutional, statutory, or regulatory provisions."  Bardin, 39 Cal. Rptr. at 636 (citing Scripps Clinic v. Superior Court, 134 Cal. Rptr. 2d 101, 116 (Ct. App. 2003)).

27
28

"The term 'fraudulent' as used in section 17200 "does not refer to the common law tort of fraud" but only requires a showing members of the public "are likely to be deceived."  Puentes v. Wells Fargo Home Mortg., Inc.,72 Cal. Rptr.3d 903, 909 (Ct. App. 2008) (quoting

Saunders v. Superior Court, 33 Cal. Rptr. 2d 438, 441 (Ct. App. 1994).  "Unless the challenged conduct 'targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer.'"  Puentes, 72 Cal. Rptr.3d at 909 (quoting Aron v. U-Haul Co. of California 49 Cal. Rptr. 3d 555, 562 (Ct. App. 2006)).

Plaintiffs' allegations are purely conclusory and fail to state a claim.  First, Plaintiffs' allegations of "unlawful" business acts or practices do not "borrow" violations of other laws.  To the extent Plaintiffs premise this claim on their TILA, HOEPA, or RESPA claims, the claim fails for the reasons already discussed.  Second, the Court need not decide which definition of "unfair" applies, because under either test, Plaintiffs fail to state a claim.  Plaintiffs fail to allege acts by Saxon and Deutsche in particular that constitute either "unfair" or "fraudulent" business acts or practices.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claim under California Business and Professions Code § 17200.

Q.    Seventeenth Cause of Action: Violation of California Civil Code § 2923.6

Plaintiffs allege that Defendants violated California Civil Code § 2923.6 because, "as a servicer under a pooling and servicing agreement," Defendants were required to implement a loan modification plan in Plaintiffs' case.  (FAC ¶ 115.)

Section 2923.6 is recently-enacted, and there is scarce authority interpreting the statute.  However, similar to other district courts that have faced the issue, the Court finds § 2923.6 does not provide a cause of action for Plaintiffs.  Section 2923.6(b) states: "It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority."  This permissive language does not impose any duty on Defendants.  See Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1188 (N.D. Cal. 2009) (holding Section 2923.6(b) did not impose a duty on defendant mortgage loan servicer or its parent corporation to modify mortgagor's loan; thus, plaintiff had no cause of action); accord Nool v. Homeq Servicing, --- F. Supp. 2d ----, 2009 U.S. Dist. LEXIS 80640, at * 8, 2009 WL

2905745, at *3 (E.D. Cal. Sept. 4, 2009) ("[T]he language of section (b) belies the imposition of any duty to engage in loan modification discussions, as the provision merely expresses legislative "intent" that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification if doing so is consistent with its authority."); <u>Farner v. Countrywide Home Loans</u>, 2009 U.S. Dist. LEXIS 5303, at *4-5, 2009 WL 189025, at *2 (S.D. Cal. Jan. 26, 2009) (same).

Accordingly, the Court GRANTS Defendants' motion to dismiss with prejudice Plaintiffs' claim under California Civil Code § 2923.6.

R.    Eighteenth Cause of Action: Violation of California Civil Code § 2923.5

Plaintiffs allege that Defendants violated California Civil Code § 2923.5 because Defendants failed to assess Plaintiffs' financial situation and attempt a "work out" plan before proceeding with foreclosure.  (FAC ¶ 119-120.)

Section 2923.5(a)(1) requires a mortgagee, trustee, beneficiary, or authorized agent to contact the borrower to explore options to avoid foreclosure before filing a notice of default. Cal. Civ. Code § 2923.5(a)(1) (2009).  However, there is an exception when the notice of default was recorded prior to the date of the statute's enactment on September 6, 2008:

> If a mortgagee, trustee, beneficiary, or authorized agent had already filed the notice of default prior to the enactment of this section and did not subsequently file a notice of rescission, then the mortgagee, trustee, beneficiary, or authorized agent shall, as part of the notice of sale filed pursuant to Section 2924f, include a declaration that either:
>
> (1) States that the borrower was contacted to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure.
>
> (2) Lists the efforts made, if any, to contact the borrower in the event no contact was made.

<u>Id.</u> § 2923.5(c) (2009).  This case falls within the exception.  Defendants recorded the Notice of Default on June 20, 2008, prior to the effective date of the statute.  (RJN, Exhibit 4.)  Defendants attached the requisite declaration to the Notice of Trustee Sale.  (RJN, Exhibit 6.)  The declaration of Regina C. Alexander, Senior Manager, signed November 10, 2008, states: "The borrower under said Deed of Trust or Mortgage has been contacted in order to assess the

borrower's financial situation and to explore options for the borrower to avoid foreclosure . . . ." Underneath this statement, it is indicated that Defendants sent Plaintiffs a "finance package" on October 27, 2008 and on March 24, 2008.  (RJN, Exhibit 6.)  Plaintiffs do not allege facts to controvert this.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claim for violation of California Civil Code § 2923.5.

**CONCLUSION**

The Court hereby:

(1)     **GRANTS** Defendants' Request for Judicial Notice;

(2)     **DISMISSES WITHOUT PREJUDICE** Plaintiffs' causes of action for (1) intentional misrepresentation, (3) breach of the covenant of good faith and fair dealing, (5) quiet title, (7) predatory lending, (8) negligence, (9) usury, (10) accounting, (12) violation of RESPA, (13) violation of FCRA, (15) violation of California Civil Code § 1632, (16) violation of California Business & Professions Code § 17200, (18) violation of California Civil Code § 2923.5;

(3)     **DISMISSES WITH PREJUDICE** Plaintiffs' causes of action for (2) breach of fiduciary duty, (4) declaratory relief, (6) violation of ECOA, (11) violations of TILA and HOEPA, (14) slander of title, (17) violation of California Civil Code § 2923.6; and

(4)     **DENIES AS MOOT** Plaintiffs' Motion for Leave to File a Second Amended Complaint and Plaintiffs' Ex Parte Application for Reconsideration of Motion for Leave to File a Second Amended Complaint.

Plaintiffs may amend the complaint as to the claims dismissed without prejudice no later than 20 days from the filing date of this order.

**IT IS SO ORDERED.**

DATED:  November 20, 2009

_Irma E. Gonzalez_

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

- 23 -